Ryan L. Gentile
Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
Tel: 201-873-7675
Attorney for Plaintiff Michael Korik

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------X
Michael Korik,

                                               Civil Action No.

                  Plaintiff,

      v.

Cedars Business Services, LLC
*doing business as*
Cedar Financial

                  Defendant.
-------------------------------------------------------X

      Plaintiff, by and through his counsel, The Law Offices of Gus Michael Farinella,

PC, as and for his Complaint against Defendant alleges as follows:


## <u>INTRODUCTION</u>


1. Plaintiff brings this action to secure redress from unlawful practices engaged in

    by Cedars Business Services, LLC, d/b/a Cedar Financial. ("Cedar" or

    "Defendant"). Plaintiff alleges violations of the Fair Debt Collection Practices

    Act, 15 U.S.C. §1692 *et seq*. ("FDCPA"), violations of the Telephone Consumer

    Protection Act, 47 U.S.C. §227 *et seq*., ("TCPA") and invasion of Plaintiff's

    personal privacy by intrusion upon seclusion.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the FDCPA claim pursuant to 15 U.S.C. §1692k.

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 over the TCPA claim. *See* Mims v. Arrow Fin. Serv., LLC, 132 S. Ct. 740, 747 (2012).

4. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the state law claim as the claim arises out of the same case or controversy as the FDCPA claim.

5. Venue and personal jurisdiction in this District are proper because:

   a. Defendant does business within this District; and

   b. The acts giving rise to this lawsuit occurred within this District.


## PARTIES

6. Plaintiff, Michael Korik, is an individual natural person who resides in the City of Park Ridge, County of Bergen, State of New Jersey.

7. Defendant, Cedar, is a Limited Liability Company with its principal place of business located at 5230 Las Virgenes Suite 210 Calabasas, CA 91302.

8. The principal purpose of Cedar's business is the collection of debts using the mail and telephone.

9. Cedar regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10. On Cedar's website (http://cedarfinancial.com/about-us/), they identify as a "debt collection agency."

11. Cedar is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

## FACTS

12. A person and/or entity other than the Plaintiff allegedly incurred a financial obligation (the "Debt") to an original creditor (the "Creditor").

13. The Debt arose from services provided by the Creditor which were primarily for family, personal or household purposes and which meet the definition of a "debt" under 15 U.S.C. §1692a(5).

14. At a point known only to Cedar, the Debt was placed with them for collection.

15. Starting on November 1, 2016, Plaintiff began receiving collection calls from Cedar from phone number 818-936-6239.

16. The telephone calls from Cedar were placed to the Plaintiff's cellular phone. Plaintiff's cellular phone number is 914-xxx-8984. The telephone number 914-xxx-8984 is assigned to a cellular telephone service.

17. At all times herein mentioned, Cedar called Plaintiff on his cellular phone using an automated telephone dialer system ("ATDS" or "predictive dialer") and/or by using an artificial or prerecorded voice.

18. The calls from Cedar to Plaintiff were made in connection with the collection of the Debt.

19. The phone calls were made for the purpose of attempting to collect the Debt.

20. The purpose of every call Cedar made to Plaintiff was to collect a consumer debt allegedly owed by a person who was not the Plaintiff by the name of "Herbie" and was associated with an entity named "Hot Hippie LLC.".

21. Plaintiff is not named Herbie.

22. Plaintiff does not know anyone by the name Herbie.

23. Plaintiff has never gone by the name Herbie.

24. Plaintiff is further not associated with any entity by the name of "Hot Hippie LLC."

25. Plaintiff never owed any debt to the entity that Cedar was trying to collect on behalf of.

26. The person Cedar was trying to reach by the name Herbie, is a complete stranger to the Plaintiff. Plaintiff has never spoken to or met this supposed person named Herbie before in his entire life.

27. No one named Herbie is Plaintiff's authorized agent or legal guardian.

28. Plaintiff never permitted or allowed anyone named Herbie to give consent for Plaintiff to receive calls intended for Herbie on Plaintiff's cellular phone.

29. No one named Herbie has ever obtained Plaintiff's prior express consent to give Defendant his cellular phone number.

30. No one named Herbie ever had authority to consent to Plaintiff receiving telephone calls from Cedar.

31. The Plaintiff never gave Defendant or the original Creditor prior express consent within the meaning of the TCPA to call his cellular phone using an ATDS or an artificial or prerecorded voice.

32. Plaintiff never had or currently has any business relationship with Cedar and never furnished Cedar or the Creditor, with his cellular phone number or permission to call his cellular phone using an ADTS and/or by using an artificial or prerecorded voice.

33. The Plaintiff never provided his cellular phone number to the original Creditor or to Cedar.

34. The calls from Defendant to the Plaintiff were not made for emergency purposes within the meaning of the TCPA.

35. In seeking to collect the Debt that the Plaintiff was not responsible for, Defendant placed an unreasonably large number of phone calls to Plaintiff including after being informed that they were calling the wrong number.

36. Defendant called Plaintiff several times per month for a period of five (5) months.

37. Cedar called the Plaintiff on November 1, 2016, November 10, 2016, and November 21, 2016.

38. After the November 21, 2016 phone call, the Plaintiff called Cedar and spoke with a representative. Plaintiff explained that the Debt was not his and that Cedar was calling an incorrect number. Plaintiff ended the conversation by telling Cedar to stop calling him because they were calling a wrong number.

39. Despite telling Cedar after the November 21, 2016 phone call that he was not the correct party they were trying to reach, and they were not calling the correct number, Cedar continued to call Plaintiff no less than thirteen (13) times thereafter.

40. The purpose of each of the thirteen (13) phone calls after the November 21, 2016 phone call was to attempt to collect the Debt.

41. The last phone call Plaintiff received from Cedar attempting to collect the Debt in question was on March 28, 2017.

## CLAIM FOR RELIEF

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §1692, et seq.

42. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

43. In making continued phone calls to Plaintiff after November 21, 2016, Cedar violated 15 U.S.C. §1692d and §1692(d)(5).

44. 15 U.S.C. §1692d provides:

**§1692d    Harassment or abuse**

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number.

45. Defendant contacted Plaintiff by telephone repeatedly and continuously and did so with the intent to annoy, abuse or harass him.

46. Defendant placed no less than thirteen (13) telephone calls to Plaintiff and left voice messages on his cellular phone despite having previously being told by Plaintiff to stop calling because they were not calling the correct party and had a wrong number.

47. The natural consequence of the repeated telephone calls made to Plaintiff after Plaintiff told Defendant to stop calling because they were calling a wrong

number, all in order to attempt to collect a debt of a third party whom the Plaintiff did not know, is one of harassment towards the Plaintiff.

48. The natural consequence of the repeated phone calls made to the Plaintiff after Plaintiff told Defendant to stop calling because they were calling a wrong number, all in order to attempt to collect a debt of a third party whom the Plaintiff did not know, is that it abused and annoyed the Plaintiff.

49. Cedar violated 15 U.S.C. §1692d(5) because with the intent to annoy or harass Plaintiff, they repeatedly and continuously called Plaintiff after Plaintiff told Defendant to stop calling because they were calling a wrong number.

50. Cedar violated 15 U.S.C. §1692d(5) because the natural consequences of their continued calls to Plaintiff after Plaintiff told Defendant to stop calling because they were calling a wrong number is that it annoyed, abused and harassed the Plaintiff.

51. Cedar is liable to Plaintiff for statutory damages pursuant to 15 U.S.C. §1692k because of their FDCPA violations.

52. Plaintiff has suffered and continues to suffer actual damages as a result of Defendant's unlawful conduct including but not limited to humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment.

53. Cedar is liable to Plaintiff for actual damages pursuant to 15 U.S.C. §1692k because of their FDCPA violations.

## COUNT II

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT –

## 47 U.S.C. §227, et seq.

54. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

55. In making the above referenced phone calls to Plaintiff's cellular telephone, Defendant violated the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

56. 47 U.S.C. §227(b)(1)(A)(iii) provides,

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call  (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an  artificial or prerecorded voice ... (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

57. Cedar violated the TCPA, 47 U.S.C. §227(b)(1)(A)(iii) because they called Plaintiff's cellular phone, for non-emergency purposes, using an ATDS or an artificial or prerecorded voice and did so without the prior express consent of Plaintiff who was the called party.

58. Plaintiff was the "called party" within the meaning of 47 U.S.C. §227(b)(1) because he was the person subscribing to the called number (914-xxx-8984) at the time the calls were made by Defendant.

59. At all times mentioned herein and within the last year, Cedar called Plaintiff on his cellular telephone using an ATDS or predictive dialer and/or by using a prerecorded or artificial voice.

60. In expanding on the prohibitions of the TCPA, the Federal Communications Commission (FCC) defines a Predicative Dialer as "a dialing system that automatically dials consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a [representative] will be available to take the call…" 2003 TCPA Order, 18 FCC 36 Red 14022. The FCC explains that if a representative is not "free to take a call that has been placed by a predictive dialer, the consumer answers the phone only to hear 'dead air' or a dial tone, causing frustration." Id. In addition, the TCPA places prohibitions on companies that "abandon" calls by setting "the predictive dialers to ring for a very short period of time before disconnecting the call; in such cases, the predicative dialer does not record the call as having been abandoned." Id.

61. In 2015 the FCC further explained what meets the definition of an "autodialer." "We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers. We also reiterate that predictive dialers, as previously described by the Commission,

satisfy the TCPA's definition of "autodialer" for the same reason.  We also find that callers cannot avoid obtaining consent by dividing ownership of pieces of dialing equipment that work in concert among multiple entities."

62. Defendants' telephone systems have some earmarks of predictive dialer, the voice messages left on the Plaintiff's cellular phone appear to be pre-recorded messages.

63. Upon information and belief, Defendant's predictive dialers have the capacity to store, produce, or call randomly or sequentially generated telephone numbers to be called, using a random or sequential number generator.

64. Plaintiff never gave prior express consent either directly or through an authorized agent, legal guardian, or other intermediary to Defendant or the original creditor to contact him on his cellular telephone using an ATDS or predictive dialer and/or by using a prerecorded or artificial voice. Plaintiff never provided his cellular phone number to the original Creditor or to Cedar or gave any third-party prior express consent to give his cellular phone number to Cedar, or the original Creditor.

65. Plaintiff did not have any prior or current business relationship with Defendant or the original Creditor. Cedar was calling Plaintiff's cellular telephone seeking to collect the Debt of a third party who was a total stranger to Plaintiff.

66. The calls from Defendant to Plaintiff were not placed for "emergency purposes" as defined by 47 USC §227(b)(1)(A).

67. The aforementioned calls made by Defendant to Plaintiff constitute violations of the TCPA.

68. Each of the phone calls made by Defendant to Plaintiff after Plaintiff told Defendant to stop calling because they were calling a wrong number were willful violations of the TCPA entitling Plaintiff to treble damages.

69. As a result of each call made in negligent violation of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each called placed in violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(B).

70. As a result of each call made in knowing and/or willful violation of the TCPA, Plaintiff is entitled to an award of treble damages in an amount up to $1,500.00 pursuant to 47 U.S.C. §227(b)(3).

## COUNT III

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

71. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

72. The Restatement of Torts, Second, §652(b) ascribes liability for intrusion upon seclusion where one individual, "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns…if the intrusion would be highly offensive to a reasonable person."

73. New Jersey recognizes several torts for invasion of privacy as the "interference with the right of the plaintiff to be left alone."

74. Defendant, by placing no less than thirteen (13) phone calls to Plaintiff after Plaintiff told Defendant to stop calling because they were calling a wrong

number, made telephone calls to the Plaintiff that were repeated with such persistence and frequency that they were a substantial burden to him.

75. The Defendant's telephone calls to the Plaintiff after Plaintiff told Defendant to stop calling because they were calling a wrong number, were repeated with such persistence and frequency as to be considered, "hounding the plaintiff, and a "substantial burden to [his] existence," amounting to an invasion of privacy as defined by the Restatement of Torts, Second §652(b) cmt. D.

76. Defendant's conduct of placing repeated and persistent phone calls to Plaintiff after Plaintiff told Defendant to stop calling because they were calling a wrong number, would be considered highly offensive to the ordinary reasonable person, as the result of conduct to which the reasonable person would strongly object. Thus, Defendant violated New Jersey state law.

77. As a result of the intrusions and invasions enumerated above, Plaintiff is entitled to actual damages from Defendant.

**WHEREFORE**, this Court should enter judgment in favor of Plaintiff and against Defendant for:

        (1)      Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k;

        (2)      Actual damages including but not limited to, the emotional distress the Plaintiff has suffered (and continues to suffer) as a result of Defendant's intentional, reckless, and/or negligent invasions of privacy and violations of the FDCPA;

(3)     Attorney's fees, litigation expenses and costs of suit pursuant to

15 U.S.C. §1692k(a)(3);

(4)     Statutory damages of $500.00 for each violation determined to be

negligent pursuant to 47 U.S.C. §227(b)(3)(B);

(5)     Treble damages for each violation determined to be willful

and/or knowing pursuant to 47 U.S.C. §227(b)(3) (concluding

language); and

(6)     Such other and further relief as the Court deems proper.

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

Pursuant to Local Rule 11.2, I certify that this matter in controversy is not the

subject of any other action pending in any court, arbitration or administrating proceeding.

Dated: Floral Park, New York
       July 23, 2017

The Law Offices of Gus Michael Farinella, PC

/s/ Ryan Gentile

By:_____

Ryan Gentile, Esq.
Attorney for Plaintiff
110 Jericho Turnpike - Suite 100
Floral Park, NY 11001
Tel: (201) 873-7675
rlg@lawgmf.com